UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

DANIEL N.,

                        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

                        Defendant.

NO.  C17-5895-JPD

ORDER AFFIRMING THE
COMMISSIONER

Plaintiff appeals the final decision of the Commissioner of the Social Security
Administration ("Commissioner") which denied his application for Disability Insurance
Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing
before an administrative law judge ("ALJ").  For the reasons set forth below, the Court
ORDERS that the Commissioner's decision be AFFIRMED.

I.        FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a twenty-five year old man with
a high school education and some college.  Administrative Record ("AR") at 60.  His past
work experience includes employment as an army infantryman for five years until February 23,
2015.  AR at 61, 65.  After he left the military, he took college courses from June to December
2015.  AR at 61-62.

On October 21, 2015, he filed an application for DIB, alleging an onset date of June 4, 2014. AR at 14. However, he later amended his alleged onset date to August 11, 2014. AR at 14, 58. Plaintiff asserts that he is disabled due to a broken back, hearing loss, sleep apnea, bladder incontinence, post-traumatic stress disorder ("PTSD"), and a slipped/bulging disc. AR at 103.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 14. Plaintiff requested a hearing, which took place on December 22, 2016. AR at 54-101. On May 2, 2017, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on her finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 11-41. Plaintiff's request for review was denied by the Appeals Council, AR at 1-7, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On November 13, 2017, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 6.

## II.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.     EVALUATING DISABILITY

The claimant bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the

national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[1]  If he is, disability benefits are denied.  If he is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.  If the claimant does not have such impairments, he is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true,

then the burden shifts to the Commissioner at step five to show that the claimant can perform

other work that exists in significant numbers in the national economy, taking into consideration

the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g),

416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable

to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.    DECISION BELOW

On May 2, 2017, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social
Security Act through September 30, 2020.

2.    The claimant has not engaged in substantial gainful activity since
August 11, 2014, the amended alleged onset date.

3.    The claimant has the following severe medically determinable
impairments: lumbar spine degenerative disc disease; obesity; hearing
loss; post-traumatic stress disorder (PTSD); and major depressive
disorder.

4.    The claimant does not have an impairment or combination of
impairments that meets or medically equals the severity of one of the
listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, I find that the claimant
has the residual functional capacity to perform light work as defined in
20 CFR 404.1567(b), but with the following exceptions.  He can
frequently stoop, kneel, crouch, crawl, and climb ladders, ropes, or
scaffolds.  He has difficulty hearing conversation in a loud
environment (loud as defined in the Dictionary of Occupational Titles
(DOT)).  He must avoid concentrated exposure to extreme cold, noise,
vibration, and hazards.  He can work in proximity to the general
public and co-workers, but is unable to perform customer service,
sales, or counter type work.  He can perform work that does not
require teamwork or collaborative decision-making with co-
workers.

6.    The claimant is unable to perform any past relevant work.

7. The claimant was born on XXXXX, 1991, and was 23 years old, which is defined as a younger individual age 18-49, on the amended alleged onset date of disability.[2]

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 11, 2014, through the date of this decision.

AR at 16-41.

## VI.      ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in evaluating plaintiff's testimony?

2. Did the ALJ err in evaluating the lay witness evidence?

3. Did the ALJ err in evaluating the Veteran's Administration ("VA") disability rating?

4. Did the ALJ err in evaluating the medical opinion evidence?

5. Did the ALJ err in assessing plaintiff's RFC, or at step five?

Dkt. 19 at 1; Dkt. 22 at 1-2.

## VII.      DISCUSSION

A.      The ALJ Did Not Err in Evaluating Plaintiff's Credibility

1.      *Legal Standard for Evaluating the Plaintiff's Testimony*

As noted above, it is the province of the ALJ to determine what weight should be

afforded to a claimant's testimony, and this determination will not be disturbed unless it is not

---

[2] The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.[3] *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties

---

[3] In Social Security Ruling (SSR) 16-3p, the Social Security Administration rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation." SSR 16-3p. This change was effective March 28, 2016 and is therefore applicable to the ALJ's May 2, 2017 decision in this case. The Court, however, continues to cite to relevant case law utilizing the term credibility.

concerning the nature, severity, and effect of the alleged symptoms. *Thomas*, 278 F.3d at 958-59 (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

### 2. The ALJ Did Not Err by Finding Affirmative Evidence of Malingering

The ALJ reasonably determined that plaintiff's symptom testimony was not fully consistent with the record. AR at 32-36. Specifically, the ALJ asserted that although plaintiff's "severe medically determinable impairments could reasonably be expected to cause some of the claimant's alleged symptoms . . . the claimant's statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not consistent with the medical evidence and other evidence in the record." AR at 22. An ALJ can reject a claimant's testimony upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so. *Benton ex. rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).[4] Here, the ALJ found affirmative evidence of malingering, and she also provided clear and convincing reasons to discredit plaintiff's testimony regarding the severity of his symptoms. AR at 32-26.

The ALJ reasonably discounted plaintiff's subjective complaints because the record contained affirmative evidence of malingering. AR at 34, 612, 1067. Specifically, in October 2014, plaintiff demonstrated variable effort and "failed all validity measures" during a neuropsychological evaluation. AR at 609. The examining psychologist found that the test results "significantly underrepresent[e]d his true cognitive abilities." AR at 609. He diagnosed plaintiff with malingering and opined that plaintiff "likely has issues of secondary gain (e.g.,

---

[4] The ALJ reviewed plaintiff's complaints of degenerative disc disease, obesity, migraines, hypertension, and sleep apnea, and she accounted for these impairments by limiting him to light work that required no more than frequently stooping, kneeling, crouching, crawling, and climbing ladders, ropes or scaffolds. AR at 20. The ALJ also accounted for plaintiff's PTSD, hearing loss, and depression by limiting him to work with (1) no concentrated exposure to extreme cold, noise, vibration, and hazards, (2) no customer service, sales or counter-type work, and (3) no teamwork or collaborative decision-making with co-workers. AR at 20-21.

disability compensation)." AR at 609, 612. Plaintiff again exhibited poor effort during a

mental status examination in February 2016. AR at 1066. The examining physician stated that

plaintiff "appeared to have attempted to malinger symptoms of severe cognitive impairment,"

and she similarly diagnosed plaintiff with malingering. AR at 1067. Thus, the ALJ reasonably

found affirmative evidence of malingering that undermined the reliability of plaintiff's

symptom testimony. AR at 25, 31, 34.[5]

### 3. The ALJ Provided Several Clear and Convincing Reasons to Reject Plaintiff's Symptom Testimony

In addition to noting affirmative evidence of malingering in the record, the ALJ

identified several reasons for rejecting plaintiff's testimony regarding the severity of his

symptoms. AR at 32-26. As discussed below, the ALJ properly found that the objective

medical evidence, plaintiff's treatment history, noncompliance with treatment

recommendations, his use of unemployment benefits, and numerous inconsistent statements

undermined the reliability of plaintiff's allegations.

### (i) Objective Medical Evidence

The ALJ found that the objective medical evidence was inconsistent with plaintiff's

subjective complaints. AR at 32-33. An ALJ can reject symptom testimony that does not

comport with the objective evidence in the medical record. *Bray v. Comm'r of Soc. Sec.

Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2007). Here, the ALJ could reasonably find that the

objective medical evidence indicates that plaintiff's symptoms and limitations were not as

severe as he alleged. For example, plaintiff testified that a "shattered" vertebrae in his back

---

[5] The fact that another examining physician, Dr. Collingwood, did not find malingering does not undermine the ALJ's conclusion, as plaintiff alleges. Not only did two doctors diagnose plaintiff with malingering, AR at 609, 1067, but other doctors substantiated these diagnoses by discussing behaviors indicating that plaintiff was less than credible. AR at 575, 605, 642, 647, 652, 654, 709, 957, 1021. Moreover, it is the province of the ALJ to weigh conflicting medical evidence.

prevented him from working. AR at 67. However, the ALJ noted that imaging studies of his

lumbar spine revealed moderate findings and no evidence of a "shattered" vertebrae. AR at 32,

465-66, 551, 776.[6] The ALJ further noted that plaintiff was also able to ambulate with a

normal gait, AR at 699, 2320, 2410, and he exhibited intact range of motion, strength,

sensation and reflexes, as well as negative straight leg raise testing upon examination. AR at

33, 699, 778, 952, 966, 987, 1017, 1050, 1071, 2320.

Regarding his psychological functioning, plaintiff testified that he had difficulty with

concentration and memory, and he had difficulty functioning around other people. AR at 64,

66-67. However, the ALJ found that other than during psychological evaluations tied to

benefits, when doctors found him to be exaggerating his symptoms, AR at 609-12, 654, 1066-

67, plaintiff regularly demonstrated intact attention, concentration, memory, judgment, thought

processes and speech. AR at 33, 453, 605, 609, 687, 720-21, 1000, 1005, 2410, 2417. He also

consistently engaged in a pleasant and cooperative manner with medical and mental health

professionals. AR at 33, 574, 699, 720, 753, 756, 977, 1000, 1005, 1024, 1037, 1050, 2417.

Thus, the ALJ reasonably concluded that the objective medical evidence was not consistent

with the severity of limitations plaintiff alleged. AR at 32-33.

Finally, plaintiff's contention that the ALJ erroneously relied on the objective medical

evidence to discount his symptom testimony is unpersuasive. Although pain testimony cannot

be rejected on the sole ground that it is not fully corroborated by the objective medical

evidence, the medical evidence is still "a relevant factor" in determining the severity of the

---

[6] Plaintiff contends that the ALJ erred in discounting his symptom testimony regarding his back pain because one of his doctors encouraged him to consider a fusion surgery. AR at 22, 598. The mere fact that one doctor considered surgery to be a viable option, when other doctors advised against surgery, does not establish any error by the ALJ in evaluating this evidence. AR at 2423. Even "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

claimant's impairments. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, the objective medical evidence was one of a number of relevant factors that the ALJ considered when assessing plaintiff's subjective complaints. AR at 32-36.

### (ii) Treatment History

The ALJ also found that plaintiff's modest and effective treatment history cast doubt on the reliability of his symptom testimony. AR at 33. An ALJ may reject symptom testimony "if the level or frequency of treatment is inconsistent with the level of complaints[.]" *Molina*, 674 F.3d at 1113. Here, the ALJ noted that the medical evidence indicates that plaintiff's right hearing aid helped him to hear out of his right ear, AR at 558, 796, and that medication alleviated his physical pain. AR at 33, 698, 975, 977, 2426. Similarly, the ALJ noted that plaintiff's mental health symptoms similarly improved after starting psychotropic medication and therapy. AR at 33, 427, 669. "Impairments that can be controlled effectively with medication are not disabling . . . ." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Thus, the ALJ reasonably concluded that plaintiff's modest and effective treatment history was inconsistent with his level of complaints. AR at 33. Plaintiff makes no argument to the contrary. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) ("[I]ssues not argued with specificity in briefing will not be addressed.").

### (iii) Non-Compliance with Treatment Recommendations

The ALJ also rejected plaintiff's symptom testimony because he was not compliant with the treatment recommended by his providers. AR at 35. An ALJ may reject symptom testimony if "the medical reports or record show that the individual is not following the treatment and there are no good reasons for this failure." *Molina*, 674 F.3d at 1113. Substantial evidence supports this finding. For example, plaintiff did not use his continuous positive

airway pressure ("CPAP") machine consistently, AR at 734, 880, 2427, and he cancelled multiple fitting appointments for a new hearing aid. AR at 35, 572, 807. In addition, plaintiff declined psychotropic medications and therapy on multiple occasions, stating at times that he was too busy with his college courses to pursue treatment. AR at 575, 585, 605-06, 1006, 1069.

Plaintiff argues that the ALJ did not comply with Social Security Ruling ("SSR") 16-3p, by failing to inquire into plaintiff's reasons for failing to comply with treatment recommendations. SSR 16-3p, *available at* 2017 WL 5180304, at *9. However, the ALJ did consider possible reasons that plaintiff did not comply with treatment in accordance with this ruling, such as by considering plaintiff's explanation that he could not pursue various treatment recommendations due to his college coursework schedule. AR at 35, 575, 1006, 1069. The ALJ considered this rationale but reasonably found it to be inadequate. AR at 35. Moreover, "there was no medical evidence that [Plaintiff's] resistance was attributable to [his] mental impairment rather than [his] own personal preference, and it was reasonable for the ALJ to conclude that the 'level or frequency of treatment was inconsistent with the level of complaints.'" *Molina*, 674 F.3d at 1114. Accordingly, the ALJ reasonably concluded that plaintiff's inadequately explained failure to comply with his treatment regimen undermined his subjective complaints. AR at 35.

        *(iv)*    *Unemployment Benefits*

The ALJ found that plaintiff's receipt of unemployment benefits from the first quarter of 2015 through the first quarter of 2016 contradicted his claim that he was unable to work during this period, because plaintiff could only receive these benefits if he held himself out as capable of full-time work. AR at 36, 277; Wash. Rev. Code Ann §§ 50.20.010(1)(c)(ii); 50.20.110(2). A claimant's receipt of unemployment benefits can be a valid basis to reject allegations of disability, as it shows that an applicant held himself out as available for work.

*Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988); *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014).[7]

(v)     *Daily Activities*

The ALJ found that plaintiff's daily activities undermined the alleged severity of his symptoms.  AR at 35.  An ALJ may discount a claimant's allegations when his "activities [] are incompatible with the severity of symptoms alleged." *Ghanim*, 763 F.3d at 1165.  Here, despite claims of debilitating back pain that limited his ability to sit and stand, AR at 67, 370, plaintiff was capable of cycling at least two miles on a stationary bicycle multiple times weekly and attending community college full-time.  AR at 35, 963, 977, 1000, 1005, 1024, 1064, 2408.  While plaintiff informed the agency that he did not walk his dog, AR at 81-82, he informed treatment providers that he walked his dog during the day. AR at 35, 1000.  In addition, although plaintiff claimed that he had problems with concentration, memory, and handling stress, AR at 66, 375-76, he was able to help care for his son, handle the mental demands of attending college full-time, manage self-care, perform household chores, and drive independently.  AR at 35, 371, 1036, 1065-66. Thus, the ALJ reasonably concluded that plaintiff's activities were inconsistent with the severity of his alleged symptoms.  AR at 35.

(vi)     *Inconsistent Statements*

Finally, the ALJ found that plaintiff's numerous inconsistent statements throughout the record undermined the reliability of his subjective symptom testimony.  AR at 34. When evaluating such testimony, an ALJ may consider prior inconsistent statements concerning symptoms and other testimony by the claimant that appears less than candid. *Molina*, 674 F.3d at 1112.  In addition to the affirmative evidence of malingering discussed above, AR at 612,

---

[7] Plaintiff cites no law or regulation, nor is the Court aware of any, that allows Veterans to hold themselves out as available for full-time employment while pursuing Social Security disability benefits but bans civilians from doing the same.

1067, the ALJ noted the numerous inconsistencies in plaintiff's testimony, listing them by bullet point. AR at 34. For example, the ALJ noted that during a therapy session in April 2014, plaintiff's self-report of severe symptoms, including his claim that he was having hallucinations and paranoia, was not consistent with his clinical presentation. AR at 34, 457. During an August 2014 hearing test, the evaluator noted that plaintiff's performance on the test indicated that he may be exaggerating the severity of his hearing problems, because it was inconsistent with the degree of hearing loss noted on his previous audiogram. AR at 34, 709. The evaluator also noted that plaintiff had a history of exhibiting nonorganic findings on a previous audiogram. AR at 34, 709. Similarly, contrary to plaintiff's self-reported a history of concussion in Iraq during an October 2014 traumatic brain injury screening, he screened negative for a traumatic brain injury in 2012 and afterwards. AR at 815. Plaintiff also performed very slowly on a cognitive screening measure and scored in the range of dementia, even though he reported that he had taken the test previously. AR at 815. The examiner concluded that, even if plaintiff sustained a mild traumatic brain injury in Iraq, that still would not account for the score he received on the cognitive screening or his clinical presentation, "which seems overly dramatic and likely reflective of Axis II personality features." AR at 34, 815. Finally, the ALJ noted that plaintiff endorsed significant elevation of uncommon symptoms during an October 2014 mental health intake assessment, causing the doctor to note "that he may have reported more psychological symptoms than objectively exist." AR at 34, 575.

The ALJ reasonably determined that "it is the combination of these inconsistencies, and not any inconsistency in particular, that undermines the claimant's reliability as an accurate historian." AR at 33-34. *See also Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (explaining that, if a claimant is found to be less than candid in parts of his testimony, an ALJ

may take that into account in determining whether the rest of his testimony is reliable).
The ALJ did not assess plaintiff's overall character or truthfulness, as plaintiff asserts. Dkt. 19
at 23. Rather, the ALJ properly discussed specific inconsistencies with the objective medical
evidence and the other evidence in the record. AR at 32-35; *see* SSR 16-3p, *available at* 2017
WL 5180305, at *8 (stating a claimant's statements are less reliable if they are "inconsistent
with the objective medical evidence and the other evidence.").

Accordingly, the ALJ not only found affirmative evidence of malingering, but
identified several clear and convincing reasons for giving plaintiff's testimony regarding the
intensity, persistence, and limiting effects of his symptoms little weight. Contrary to plaintiff's
allegations, the ALJ's reasons are supported by substantial evidence in the record.

B.     The ALJ Did Not Err in Evaluating the Lay Witness Testimony

Plaintiff's wife, Mrs. Dinah N., submitted a third party function report on November
15, 2015, as well as a December 2016 lay witness statement. AR at 349-56, 407-08. The ALJ
summarized both of her lay witness statements in detail, such as her report that his back
injuries affect his ability to lift, stand, walk, sit, and perform postural movements. She also
reported that she spends most of her day taking care of him and reminding him to perform
tasks. However, she reported that he does not cook, perform household chores, yard work, or
take care of anyone at home. She also reported that he has great problems with concentration,
memory, and completing tasks. AR at 36-37.

The ALJ stated that although she reviewed the lay witness's statements in detail, "they
do not convince me that the [RFC] is less limiting than warranted by the evidence discussed in
this decision." AR at 37. The ALJ reiterated that "her statements regarding the severity of her
husband's physical limitations are not consistent with the objective findings showing that his
pain is controlled with medication. His physical examinations and imaging studies also did not

reveal significant low back problems." AR at 37. Moreover, "her statements regarding the severity of his mental health issues are grossly inconsistent with his spotty mental health treatment history, as well as substantial evidence in the record of symptom embellishment. AR at 37. Finally, the ALJ concluded that her statements regarding his limited activities of daily living were contradicted by evidence indicating that he is able to perform his activities of daily living independently, and help take care of their son and exercise. AR at 37. As a result, the ALJ gave her lay witness statements little weight.

In order to determine whether a claimant is disabled, an ALJ may consider lay-witness sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as well as "non-medical" sources, such as spouses, parents, siblings, and friends. *See* 20 C.F.R. § 404.1527(f). Such testimony regarding a claimant's symptoms or how an impairment affects his/her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). This is particularly true for such non-acceptable medical sources as nurses and medical assistants. *See* Social Security Ruling ("SSR") 06-03p (noting that because such persons "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists," their opinions "should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

Here, the ALJ provided several specific and germane reasons for declining to adopt Ms. N.'s testimony about her husband's functioning and limitations. Ms. N.'s testimony was substantially the same as that of the claimant. For example, both plaintiff and Mrs. N.

indicated that plaintiff's back pain limited his ability to lift, stand, walk, sit and perform postural movements. *Compare* AR at 322, 327, 354, 407 *with* AR at 370, 375-76.  Plaintiff and Mrs. N. also both alleged that plaintiff suffered from hearing loss and migraines as well as problems with sleep, memory, concentration, understanding, following instructions, and completing even simple tasks.  *Compare* AR at 349-50, 354, 357, 407-08 *with* AR at 66-67, 358-59, 370, 375-76.

The Ninth Circuit has consistently held that an ALJ may reject lay witness testimony for the same reasons she rejected a claimant's subjective complaints, if the lay witness statements are similar to such complaints. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).  Accordingly, the ALJ did not err by rejecting Mrs. N.'s testimony for the same reasons that she rejected plaintiff's testimony.  AR at 32-37.

C.      The ALJ Did Not Err in Evaluating the VA Disability Rating

On October 28, 2014, the VA rated plaintiff with a 50% service-connected disability rating for the combination of PTSD, obstructive sleep apnea, lumbosacral or cervical strain, impaired hearing, and tinnitus.  AR at 2359.  On February 26, 2015, the VA increased his disability rating to 90%.  AR at 2469-84.  On May 9, 2016, the VA increased his rating for PTSD and major depression to 70%, but his overall rating remained at 90%.  AR at 2430-44.

An ALJ must ordinarily give great weight a VA disability rating.  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).  However, "[b]ecause the VA and SSA criteria for determining disability are not identical, [] the ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Id.*

Here, the ALJ met this standard by providing sufficiently persuasive, specific, and valid reasons to discount the VA rating. First, the ALJ rejected the VA disability rating due to the affirmative evidence of malingering in the record. AR at 37. As noted above, multiple medical providers questioned the validity of plaintiff's performance during evaluations or noted that he likely exaggerated the severity of his symptoms related to PTSD and other alleged impairments for secondary gain. AR at 575, 605, 612, 642, 647, 652, 654, 709, 957, 1021, 1067. Moreover, the ALJ pointed out that where the VA's regulations require the VA to resolve reasonable doubt in the applicant's favor, the Social Security Administration does not have comparable regulations. AR at 37; *see* 38 C.F.R. § 4.3.

Second, the ALJ noted that the VA rating of 50% for obstructive sleep apnea was not consistent with evidence indicating that plaintiff's condition was well controlled with prescribed CPAP therapy. AR at 37, 670, 1787. This inconsistency provides another persuasive, specific and valid reason for the ALJ to discount the VA rating in this particular case.

Accordingly, the ALJ did not err by assigning plaintiff's VA disability rating little weight, given the evidence of malingering as well as the inconsistencies between the VA rating and the medical evidence in the record. *See Wagner v. Bernhart*, 154 Fed. Appx. 677, 678 (9th Cir. 2005) (finding that the ALJ properly rejected VA's disability rating because it was not consistent with the medical record as a whole); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (upholding rejection of medical opinion because it was inconsistent with clinical notes and other recorded observations and opinions regarding claimant's abilities).

D.    <u>The ALJ Did Not Err in Evaluating the Medical Opinion Evidence</u>

    1.    *Plaintiff's Failure to Connect the Lengthy Summary of the Medical Record to Specific Assignments of Error*

As a threshold matter, the Court was deeply troubled, upon reviewing plaintiff's opening brief, to find that pages two through eighteen are merely a summary of the medical evidence of record, without reference to any specific errors alleged. Dkt. 19 at 2-18. Plaintiff's counsel has long been aware that such organization runs counter to the directives of the Court's Scheduling Order, which provides that "discussion of the relevant facts must be presented in the argument section *in the context of the specific errors alleged*." Dkt. 11 at 2 (emphasis added). Even more concerning is the fact that plaintiff's counsel previously filed an untimely motion seeking leave to file an over-length brief in this case, presumably in order to include this unnecessarily long (and therefore unhelpful) summary of the medical record.

As the circumstances of this case appear nearly identical to *Brooks v. Berryhill*, Case. No. 3:18-cv-5313-JRC, where plaintiff's counsel was recently sanctioned for these same practices, the Court will not take any further action with respect to the over-length opening brief filed in this case. However, plaintiff's counsel is an experienced social security practitioner, and the Court does not expect to see an opening brief suffering from these deficiencies in the future.

    2.    *Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or

the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is

consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

### 3. *Dr. Melinda C. Losee, Ph.D.*

Examining psychologist Melinda C. Losee, Ph.D., diagnosed plaintiff with malingering and rule-out PTSD. AR at 1067. She stated that plaintiff appeared to malinger symptoms of severe cognitive impairment. AR at 1067. She further opined that plaintiff was (1) capable of understanding, remembering, and carrying out simple and detailed instructions, (2) able to make simple work-related decisions and adapt to changes in a work setting, and (3) capable of interacting appropriately with supervisors, coworkers, and the public. AR at 1067.

The ALJ gave significant weight to Dr. Losee's opinion because it was consistent with the medical evidence of record, including plaintiff's performance during Dr. Losee's examination. AR at 37-38, 1067. The ALJ also reasoned that Dr. Losee was knowledgeable about the Social Security Administration's disability program. AR at 27. Nevertheless, the ALJ included additional social restrictions in his RFC finding. AR at 20-21, 38.

Plaintiff contends that Dr. Losee's opinion was "tainted" by her review of prior evaluations, wherein exaggeration or malingering was suspected. Dkt. 19 at 19. For example, a prior evaluating physician rejected his claim that he was injured in a bombing accident. AR at 1064. Plaintiff also argues that the ALJ failed to acknowledge plaintiff's testimony that Dr. Losee was late, started pushing him to answer questions quickly, and spent only 15-20 minutes with him. AR at 94. Finally, plaintiff asserts that Dr. Losee did not have an opportunity to review Dr. Collingwood's opinion. Dkt. 19 at 19.

Plaintiff's arguments are unpersuasive. There is no evidence that Dr. Losee's ability to independently assess plaintiff was undermined by her review of prior records, especially because Dr. Losee explicitly discussed plaintiff's atypical responses during her examination.

AR at 1067. In addition, the fact that Dr. Collingwood issued her opinion approximately nine months after Dr. Losee's evaluation, and therefore Dr. Losee did not have an opportunity to review this contrary medical opinion, is not a sufficient reason to reject her opinion. The mere fact that another doctor offered a contrary medical opinion at a later date does not render Dr. Losee's opinion invalid. *See* 20 C.F.R. § 404.1527(c) (discussing factors an ALJ considers when weighing medical opinion evidence).

Moreover, plaintiff is mistaken that the ALJ failed to acknowledge plaintiff's testimony about his experience with Dr. Losee. The ALJ expressly acknowledged plaintiff's testimony that he arrived late to Dr. Losee's examination and felt rushed, but she reasonably determined that this testimony was unreliable as it is the ALJ's duty to resolve conflicts in the evidence. AR at 34, 59. *See also Lewis v. Apfel*, 236 F.3d 503, 509, (9th Cir. 2001). Plaintiff has not shown any error by the ALJ in evaluating Dr. Losee's opinion.

### 4. *Dr. Howard Platter, M.D.*

State agency medical consultant Howard Platter, M.D., opined that plaintiff could perform the requirements of light work with the following limitations: he could frequently stoop, kneel, crouch, drawl, and climb ladders, ropers or scaffolds; he had limited hearing in his right ear; and he should avoid concentrated exposure to extreme cold, noise, vibration and hazards. AR at 38, 148-50.

The ALJ assigned Dr. Platter's opinion significant weight, reasoning that Dr. Platter's opinion was consistent with the medical evidence, which showed that plaintiff's pain was controlled with medication, his right hearing aid was effective, and his physical examinations were unremarkable. AR at 38. The ALJ also reasoned that Dr. Platter reviewed plaintiff's available records and was knowledgeable about the Social Security Administration's disability program. AR at 38.

Plaintiff argues that the ALJ erred in her evaluation of Dr. Platter's opinion because Dr. Platter is a non-examining physician who did not review evidence offered at a later date. Dkt. 19 at 19. However, the ALJ is not required to reject the opinions of State agency medical consultants for this reason, and the Ninth Circuit has held that the opinions of State agency medical consultants may serve as substantial evidence when "they are consistent with other evidence in the record." *Thomas*, 278 F.3d at 957. Plaintiff has not shown that the ALJ erred by concluding that Dr. Platter's opinion was consistent with other evidence in the record. AR at 38, 148-50. As noted above, the fact that other evidence was included in the record after Dr. Platter issued his opinion, and therefore "Dr. Platter did not review any evidence beyond May 13, 2016," is inapposite.

### 5. *Dr. Cynthia Collingwood, Ph.D.*

Examining psychologist Cynthia Collingwood, Ph.D., performed a pshcological evaluation of plaintiff on November 17, 2016. AR at 2531-44. She performed a range of testing, a clinical interview, and reviewed medical records from the Department of Disability, Department of Defense, the VA, and Dr. Losee's psychological evaluation. AR at 2531. She opined that plaintiff had severe limitations in his ability to (1) understand and remember instructions, (2) sustain concentration and persistence, (3) interact socially, and (4) adapt in the workplace. AR at 2540-43. She further opined that plaintiff would be absent from work five days or more per month and that he would be off task more than thirty percent of the time. AR at 2544. As discussed more fully below, the ALJ discussed Dr. Collingwood's opinion in detail, and provided several provided specific and legitimate reasons to assign Dr. Collingwood's opinion little weight. AR at 38-39.

*(i)      Inconsistency with the Record*

The ALJ rejected Dr. Collingwood's opinion, in part, because although "Dr. Collingwood had a chance to examine the claimant and his records in forming an opinion[,] . . . her opinion regarding the severity of his mental health limitations is grossly inconsistent with the overall medical evidence of record." AR at 39. The ALJ explained, "the doctor argued that she spent over three hours with the claimant and performed a detailed examination supporting cognitive deficits and a traumatic brain injury. However, her arguments are not persuasive as they are inconsistent with the rest of the evidence in the record." AR at 39. For example, the ALJ pointed out that "there is substantial evidence throughout the record of the claimant exaggerating the severity of his mental health problems for secondary gain, including explicit references to the claimant trying to push VA providers to add PTSD to his profile so he can get additional money for his family." AR at 39. In addition, "multiple other providers also noted the claimant's malingering, poor performance, and symptom embellishment." AR at 39. Consistency with the record as a whole is a relevant factor that the ALJ should consider when assessing a medical opinion. 20 C.F.R. § 404.1527(c)(4). As discussed above, the ALJ found that the record indicates that plaintiff repeatedly exaggerated the severity of his symptoms for secondary gain. AR at 39, 575, 605, 612, 642, 647, 652, 654, 709, 957, 1021, 1067.

In addition, the ALJ found that plaintiff made statements to Dr. Collingwood during the examination that were contradicted by the rest of the evidence. AR at 39. As an example, the ALJ noted that plaintiff "informed the doctor that he feels detached to his family and performs minimal household responsibilities." AR at 39, 2533, 2536. However, the ALJ noted that there are multiple notes in the record regarding the claimant having a good relationship with his family and helping to take care of his young child at home." AR at 39, 963 (Plaintiff is busy with responsibilities in school and "having a young 11 month old baby"),

1005 ("[Plaintiff] and his wife have a good relationship"), 1036 (Plaintiff describes his

relationship with his wife and child as "good"), 1065 (Plaintiff reported that he "enjoys time

with his family" and he "tries to help his wife with his son" during the day).

Based upon this evidence, the ALJ reasonably determined that Dr. Collingwood's

examination and opinion were inconsistent with the rest of the evidence in the record. AR at

39. Although plaintiff believes that Dr. Collingwood's opinion undermined evidence of

malingering and symptom exaggeration found by other providers in the record, it is the

responsibility of the ALJ to resolve conflicts in the evidence. *Lewis*, 236 F.3d at 509. *See also*

*Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational

interpretation, it is the ALJ's conclusion that must be upheld.").

*(ii)    Reliance on Plaintiff's Subjective Reports*

The ALJ also rejected Dr. Collingwood's opinion because it relied heavily on

plaintiff's subjective reports. AR at 39. Although a psychologist's opinion may partially rely

on a claimant's self-report of symptoms, an ALJ can disregard a psychologist's opinion that is

based "to a large extent" on the claimant's properly discounted self-report of symptoms.

*Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Ryan v. Comm'r of Soc. Sec.*, 528

F.3d 1194, 1199-200 (9th Cir. 2008). As discussed in detail above, the ALJ reasonably

discounted the reliability of plaintiff's symptom testimony due, in part, to affirmative evidence

of malingering. AR at 32-36. As a result, she did not err by disregarding Dr. Collingwood's

opinion to the extent it relied heavily on plaintiff's subjective complaints. For example, Dr.

Collingwood opined that plaintiff had severe limitations related to his ability to concentrate

and interact socially with others, although Dr. Collingwood did not document any clinical

findings or observations related to these areas, even though she spent over three hours with

plaintiff. AR at 2531-40. In addition, existing clinical evidence in the record indicates that

plaintiff did not have any difficulties with concentration. AR at 453, 720, 1005. Thus, the ALJ reasonably concluded that Dr. Collingwood relied on plaintiff's self-reported difficulties concentrating and interacting with others. AR at 2533, 2535-36. Similarly, although Dr. Collingwood also opined that plaintiff would have work-preclusive difficulties understanding and remembering detailed instructions, AR at 2541, clinical testing indicated that plaintiff's visual memory was in the impaired range, his auditory memory tested in the low average to borderline range, and he scored within normal limits on the mini mental status examination. AR at 2536-37. Based upon this evidence, the ALJ could reasonably conclude that Dr. Collingwood premised her opinion primarily on plaintiff's self-report "and failed to account for his exaggerated performance during the evaluation." AR at 39, 2531-33. The ALJ provided several specific and legitimate reasons for affording Dr. Collingwood's opinion little weight, and these reasons are supported by substantial evidence in the record.

E.     The ALJ Did Not Err in Assessing Plaintiff's RFC, or at Step Five

Finally, plaintiff contends that the ALJ's RFC assessment and the ALJ's hypothetical question to the vocational expert were deficient. However, plaintiff's remaining assignment of error is essentially a restatement of his previous arguments regarding the medical evidence in this case. Because the Court has affirmed the findings of the ALJ as to plaintiff's prior assignments of error, it must also conclude that there was no error in determining plaintiff's RFC. Plaintiff has pointed to no credible evidence, apart from plaintiff's subjective complaints which were rejected by the ALJ, establishing the additional limitations that he believes should have been included in the RFC assessment. Accordingly, the ALJ did not err by omitting these additional limitations from the RFC assessment or the hypothetical question posed to the vocational expert at step five. *See Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d

1155, 1164–65 (9th Cir. 2008) (holding that an ALJ's RFC assessment need not include impairments for which the medical records do not establish any work related impairments).

VIII.   CONCLUSION

For the foregoing reasons, the Court orders that the Commissioner's decision be AFFIRMED.  The role of this Court is limited.  As noted above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews*, 53 F.3d at 1039.  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas*, 278 F.3d at 954.  While it may be possible to evaluate the evidence as plaintiff suggests, it is not possible to conclude that plaintiff's interpretation is the only rational interpretation.

DATED this 30th day of January, 2019.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge

ORDER - 27